UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

      v.

RYAN LITTLE,

           Defendant.

22 Cr. 260 (PAE)

## GOVERNMENT'S MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS

 

DAMIAN WILLIAMS
United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Jonathan L. Bodansky
Assistant United States Attorney
   *Of Counsel*

The Government respectfully submits this memorandum of law in opposition to defendant Ryan Little's motion to suppress victim identification evidence, including out-of-court identifications of the defendant by one or more victims, and any future in-court identifications of the defendant by the same. (ECF Nos. 17-18.) For the reasons set forth below, the defendant's motion should be denied without a hearing.

## BACKGROUND

On May 4, 2022, the grand jury returned a three-count Indictment (ECF No. 5) charging the defendant, a convicted felon, with committing a gunpoint robbery of a restaurant (the "Restaurant") in Manhattan on April 20, 2022. As set forth in the Complaint (ECF No. 1), at approximately 10:30 p.m. that evening, the defendant entered the Restaurant, brandished a silver firearm, and took cash from the cash register. (Compl. ¶¶ 6(a)-(b), 7.) The defendant then left the Restaurant and fled toward a nearby park (the "Park"), while employees of the Restaurant (the "Restaurant Victims") pursued him. (*Id.* ¶ 6(b).)

Law enforcement officers (the "Officers") responded to the scene and met with the Restaurant Victims, who reported that the defendant was hiding somewhere in the Park. (*Id.* ¶ 6(c).) The Officers proceeded to search the area together with the Restaurant Victims, and, shortly thereafter, the Officers apprehended the defendant as he emerged from bushes and attempted to flee. (*Id.* ¶ 6(c)-(d).) In the immediate aftermath of the defendant's arrest, one of the Restaurant Victims ("Victim-1") approached the Officers and the defendant and identified the defendant as the man who had robbed the Restaurant. (*See* Def.'s Mem. at 2, ECF No. 18; Ex. 1 at 1:35-1:50[1].) Separately, another individual ("Victim-2"), approached the scene of the

---

[1] Exhibit 1 consists of body-worn camera footage from one of the Officers, produced to the defendant previously at "USAO_000178 [SENSITIVE] - Axon_Body_3_Video_2022-04-20_2252-8 [SENSITIVE]." The defendant cites to this footage in his brief, and attaches

defendant's arrest and informed the Officers that earlier that night, at approximately 10:30 p.m., the defendant had entered the front passenger seat of Victim-2's vehicle – parked between the Restaurant and the Park – demanded that Victim-2 drive the defendant away from the scene, and brandished a firearm. (Compl. ¶ 6(f).) Victim-2 reported that he had refused and fled from his vehicle, and, after Victim-2 remotely disabled the vehicle, the defendant had fled as well. (*Id.*)

On April 22, 2022, the defendant was charged by criminal Complaint with Hobbs Act robbery, in violation of 18 U.S.C. § 1951; brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c); and being a convicted felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). (ECF No. 1.) A grand jury returned the Indictment charging the defendant with the same offenses on May 4, 2022. (ECF No. 5.)

The defendant filed the instant motion on August 19, 2022. (ECF Nos. 17-18.) The defendant argues that any identification evidence in this case is the product of an unduly suggestive identification procedure and must be suppressed. In the alternative, the defendant requests a hearing pursuant to *United States v. Wade*, 388 U.S. 218 (1967), to address and evaluate the admissibility of such evidence.

## APPLICABLE LAW

As a general matter, the Constitution "protects a defendant against a conviction based on evidence of questionable reliability, not by prohibiting introduction of the evidence, but by affording the defendant means to persuade the jury that the evidence should be discounted as unworthy of credit." *Perry v. New Hampshire*, 565 U.S. 228, 237 (2012). Eyewitness identifications should therefore be excluded only where "improper police conduct created a

---

screenshots from it as defense Exhibits L through N. Because the footage is Sensitive Material under the Protective Order entered in this case, the Government is providing Exhibit 1 to the Court and to the defense under seal.

'substantial likelihood of misidentification.'" *Id.* at 239 (quoting *Neil v. Biggers*, 409 U.S. 188, 201 (1972)). Otherwise, the "Draconian sanction" of exclusion may not be considered, and the reliability of the identification evidence is for the jury to weigh. *Id.*

Federal courts follow a two-step analysis in ruling on the admissibility of identification evidence. *Id.* at 238-40; *Brisco v. Ercole*, 565 F.3d 80, 88 (2d Cir. 2009). First, the defendant must show that the identification was "so unnecessarily suggestive and conducive to irreparable mistaken identification that the defendant was denied due process of law." *United States v. DiTommaso*, 817 F.2d 201, 213 (2d Cir. 1987) (quoting *Stovall v. Denno*, 388 U.S. 293, 302 (1967)). That is a high threshold to meet, as the defendant must show that, under the totality of the circumstances, there is "a very substantial likelihood of irreparable misidentification." *United States v. Maldonado-Rivera*, 922 F.2d 934, 973 (2d Cir. 1990) (quoting *Simmons v. United States*, 390 U.S. 377, 384 (1968)). Moreover, the defendant must establish that the unnecessarily suggestive circumstances were brought about by "improper police conduct," *Perry*, 565 U.S. at 239-42, "involv[ing] coercive elements employed to elicit a specific identification." *United States v. Al-Farekh*, 956 F.3d 99, 111 (2d Cir. 2020); *see also Dixson v. Lamanna*, No. 18 Civ. 8285 (KPF) (SN), 2022 WL 19180, at *22 (S.D.N.Y. Jan. 3, 2022) (explaining that Due Process concerns arise from suggestive identification procedures only if they are linked to improper police conduct). If the defendant cannot make such a showing, "the trial identification testimony is generally admissible without further inquiry into the reliability of the pretrial identification," and "any question as to the reliability of the witness's identifications goes to the weight of the evidence, not its admissibility." *Maldonado-Rivera*, 922 F.2d at 973.

Second, even an unduly suggestive identification procedure brought about by improper police conduct does not necessarily require suppression of the identification evidence. *See Manson*

*v. Brathwaite*, 432 U.S. 98, 110-14 (1977).  Instead, the court must then determine whether the identification evidence is nevertheless "independently reliable" based on the totality of the circumstances.  *Brisco*, 565 F.3d at 89; *see also United States v. Simmons*, 923 F.2d 934, 950 (2d Cir. 1991) ("[E]ven a suggestive out-of-court identification will be admissible if, when viewed in the totality of the circumstances, it possesses sufficient indicia of reliability.").  Among the factors to be considered are: "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation."  *Neil*, 409 U.S. at 199-200. No single factor is dispositive.  *United States v. Concepcion*, 983 F.2d 369, 377-78 (2d Cir. 1992).

Similarly, even when a pretrial identification is found to be unduly suggestive, "the law is clear that an eyewitness may nonetheless be allowed to make an in-court identification if the eyewitness has an independently reliable basis upon which to make the identification."  *United States v. Reed*, No. 11 Cr. 487 (RJS), 2012 WL 2053758, at *6 (S.D.N.Y. June 6, 2012) (citing *United States v. Lumpkin*, 192 F.3d 280, 288 (2d Cir. 1999)); *see also United States v. Salameh*, 152 F.3d 88, 126 (2d Cir. 1998) ("A witness who identified a defendant prior to trial may make an in-court identification of the defendant if . . . the in-court identification is independently reliable, even though the pretrial identification was unduly suggestive.").  The *Neil v. Biggers* factors cited above also guide the inquiry into the independent reliability of an in-court identification.

## ARGUMENT

**I.    The Identification Evidence Is Not the Product of Any Improper Police Conduct**

As set forth above, witness identification evidence is subject to suppression only where it is the product of "improper police conduct."  *Perry*, 565 U.S. at 239-42.  Where there is no

4

improper police conduct in the identification procedure, the Due Process Clause does not regulate admissibility at all, and determinations concerning reliability must be left to the jury. *See id*. Here, because the defense has failed to establish any improper police conduct related to the identification evidence at issue, the defendant's motion should be denied.

*Perry* is on point. There, a law enforcement officer responded to a report of a suspect breaking into cars in an apartment building parking lot. *Id.* at 233. Upon her arrival at the scene, the officer encountered defendant Barion Perry standing between two cars, with car-stereo amplifiers in his hands and a metal bat on the ground behind him. *Id.* A second officer arrived soon thereafter and remained with Perry, while the first officer entered the apartment building to speak with a witness inside. *Id.* at 234. The witness reported that she had seen a man roaming the parking lot looking into cars, and had observed the same man open the trunk of her neighbor's car and remove a large box from inside. *Id.* When asked to provide a description of the suspect, the witness pointed out her window and said that he was the man standing in the parking lot, next to the police officer. *Id.*

Perry moved to suppress the witness's identification. He argued that even if the identification was not the result of improper police action, because "reliability is the linchpin of admissibility under the Due Process Clause, . . . it should make no difference whether law enforcement was responsible for creating the suggestive circumstances that marred the identification." *Id.* at 240-41. The Supreme Court rejected that argument, holding that "[t]he due process check for reliability . . . comes into play only after the defendant establishes improper police conduct." *Id.* at 241. The Court observed that "[a] primary aim of excluding identification evidence obtained under unnecessarily suggestive circumstances . . . is to deter law enforcement use of [improper identification procedures]," but "[t]his deterrence rationale is inapposite in cases

5

. . . in which the police engaged in no improper conduct." *Id.* at 241-42.  The Court concluded that "[w]hen no improper law enforcement activity is involved. . . it suffices to test reliability through the rights and opportunities generally designed for that purpose, notably, the presence of counsel at postindictment lineups, vigorous cross-examination, protective rules of evidence, and jury instructions on both the fallibility of eyewitness identification and the requirement that guilt be proved beyond a reasonable doubt." *Id.* at 233.

Here, the defense argues that because the defendant was handcuffed and surrounded by police at the time the identifications at issue were made, such identification evidence was the product of unduly suggestive procedures and must be suppressed.  But as in *Perry*, the defendant has not established – and cannot establish – that these purportedly suggestive circumstances were the result of any improper police conduct.  The defendant was handcuffed and surrounded by officers not as part of some bid to improperly influence identification procedures, but instead simply to effect the arrest of the defendant, and in response to legitimate officer safety concerns – the Officers believed the defendant to have recently committed a gunpoint robbery, and they had every reason to fear that the defendant was armed and dangerous.  Furthermore, Victim-1 and Victim-2 identified the defendant in the immediate aftermath of the arrest not because law enforcement determined to orchestrate an identification procedure at that time, but because the victims were in the vicinity of the arrest and promptly volunteered that the defendant was the person whom they had encountered earlier.  Indeed, as can be seen in the body-worn camera footage cited by the defense, Victim-1 approached the scene of the defendant's arrest and spontaneously identified the defendant of his own accord – before being escorted by law enforcement a short distance *away* from the scene.  (Ex. 1 at 1:35-1:50.)

Nothing about the Officers' conduct was improper, and the defendant cannot establish otherwise. Accordingly, there is no need to continue to the second prong of the analysis, and the defendant's motion should be denied. *See Perry*, 565 U.S. at 241 ("The due process check for reliability . . . comes into play only after the defendant establishes improper police conduct.").[2]

## II.   A Hearing is Unnecessary

"A defendant is entitled to an evidentiary hearing on a motion to suppress only if the defendant establishes a contested issue of material fact." *United States v. Noble*, No. 07 Cr. 284, (RJS), 2008 WL 140966, at *1 (S.D.N.Y. Jan. 11, 2008) (citing *United States v. Pena*, 961 F.2d 333, 339 (2d Cir. 1992)). If the moving papers do not create a genuine dispute as to any material fact, the court can decide the matter on the factual record established by the papers. *See United States v. Caming*, 968 F.2d 232, 236 (2d Cir. 1992); *United States v. Martinez*, 992 F. Supp. 2d 322, 325-26 (S.D.N.Y. 2014). Here, there are no material, disputed facts regarding the events in question. The record before the Court makes plain that the identification evidence at issue was not the result of any improper police conduct, and it is thus not subject to suppression. Accordingly, the defendant's motion should be denied without the need for live witness testimony.[3]

---

[2] To the extent that the Court were to proceed to the second prong of the analysis, it would find multiple indicia of reliability. For example, both Victim-1 and Victim-2 had the opportunity to observe the defendant, and hear his voice, while in close proximity to him; it is apparent from the body-worn camera footage that Victim-1 showed no hesitation in identifying the defendant as the culprit (Ex. 1 at 1:35-1:50); and the identifications at issue occurred only a short time after the crime. *See Neil*, 409 U.S. at 199-200. Considering the totality of these circumstances, the identification evidence is sufficiently reliable to permit the jury to decide its persuasiveness regardless of any alleged suggestiveness, and admission of such evidence would not violate the defendant's constitutional right to due process.

[3] To the extent that the defense means to argue that it requires a hearing in order to determine whether improper police conduct took place, courts in this district have routinely denied requests for *Wade* hearings in such circumstances. *See, e.g.*, *United States v. Salomon-Mendez*, 992 F. Supp. 2d 340, 343-44 (S.D.N.Y. 2014) (denying request for a *Wade* hearing where

## **CONCLUSION**

For the foregoing reasons, the Court should deny the defendant's motion in its entirety, without a hearing.

Dated: New York, New York
August 29, 2022

                Respectfully submitted,

                DAMIAN WILLIAMS
                United States Attorney for
                the Southern District of New York

By: _____
                Jonathan L. Bodansky
                Assistant United States Attorney
                (646) 957-1800

---

defendant claimed he was "unable to know whether the procedures used were improper without a hearing on the matter").